UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARL DUKES,

                              Plaintiff,

        -v-                                    1:17-CV-865

CITY OF ALBANY, PHILLIPPA
P. GARLAND–WILCOX, as
Administrator of the Estate of
Kenneth Wilcox, ANTHONY
RYAN, MICHAEL SBUTTONI,
PETER MCKENNA, KEVIN
BREEN, and RONALD MATOS,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

KELNER & KELNER                       JOSHUA D. KELNER, ESQ.
Attorneys for Plaintiff
140 Broadway, 37th Floor
New York, NY 10005

THE REHFUSS LAW FIRM, P.C.            ABIGAIL W. REHFUSS, ESQ.
Attorneys for Defendants
40 British American Boulevard
Latham, NY 12110

DAVID N. HURD
United States District Judge

### MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

        On November 17, 1998, relying on a coerced confession supported by false police

testimony, an Albany County jury wrongly convicted plaintiff Carl Dukes ("Dukes" or

"plaintiff") of murdering Erik Mitchell ("Mitchell"), a college student whose apartment plaintiff

helped burglarize four months beforehand.  Plaintiff was exonerated of Mitchell's murder in 2016 after another man confessed the precise details of the crime.

On August 7, 2017, Dukes brought this action under 42 U.S.C. § 1983 and related state law asserting claims for malicious prosecution, denial of his fair trial rights, a violation of his right against self-incrimination, and negligence[1] against defendants City of Albany (the "City") and the six detectives involved in obtaining his false confession and then securing his wrongful conviction:  Detective Kenneth Wilcox ("Detective Wilcox"),[2] Detective Anthony Ryan ("Detective Ryan"), Detective Michael Sbuttoni ("Detective Sbuttoni"), Detective Peter McKenna ("Detective McKenna"), Detective Sergeant Kevin Breen ("Detective Sergeant Breen"), and Detective Ronald Matos ("Detective Matos") (collectively "defendants").

On September 1, 2017, defendants moved under Federal Rule of Civil Procedure 12(b)(6) seeking to dismiss Dukes' complaint in its entirety on the basis of various principles of claim and issue preclusion.  The motion has been fully briefed.

## II. BACKGROUND

The following facts are taken from the complaint and assumed true for purposes of this motion.  In 1996, Dukes, who was then 19 years old and living in Albany, agreed to help Matthew Parsons ("Parsons") rob Mitchell, a small-time marijuana dealer and college student Parsons met while working at the SUNY Albany cafeteria.

On October 4, 1996, Dukes and Parsons, aided by Lavell Jones ("Jones"), Pierre Lyons ("Lyons"), and Zakee Abdul-Hameed ("Abdul-Hameed"), broke into Mitchell's

---

[1] Dukes' state law negligence claim is pleaded only against the City.

[2] The complaint names Phillippa P. Garland-Wilcox, administrator of Detective Wilcox's estate.

apartment while he was not home.[3]  Although the quintet initially escaped, Albany police

managed to identify and charge three of the men—Parsons, Lyons, and Abdul-Hameed (but

not Dukes or Jones)—with the robbery.

Four months later, on February 18, 1997, someone shot and killed Mitchell in the

vestibule of his apartment building.  Forensic evidence recovered from the scene indicated

Mitchell had been shot at close range by a .25 caliber bullet.  Under the supervision of

Detective Sergeant Breen, defendants opened an investigation and initially identified Jeffrey

Conrad ("Conrad") as a potential suspect in the murder.

Dukes alleges Conrad was a known felon on probation whose girlfriend lived several

doors down from Mitchell, and who had attempted to purchase a firearm shortly before the

murder occurred.  However, defendants completely neglected to investigate Conrad because

they believed one or more of the participants in the earlier robbery must have also carried out

the later murder.  According to plaintiff's complaint, defendants hatched a plan to turn this

hunch into one or more murder convictions.

On February 19, 1997, the day after Mitchell's murder, detectives interviewed

Parsons, who they had initially arrested for the robbery months earlier.  Although he denied

any knowledge of the murder, the detectives tried again on April 30, 1997, interrogating

Parsons until they succeeded in coercing him into claiming he "heard" from an unidentified

person that Dukes and Abdul-Hameed had gone back to Mitchell's apartment to look for

someone else, unexpectedly ran into Mitchell, and shot him.

---

[3]  Two other men present in Mitchell's apartment at the time were "rendered helpless" by the robbers.  <u>People v. Jones</u>, 725 N.Y.S.2d 691 (N.Y. App. Div. 3d Dep't 2001).

On September 8, 1997, while Dukes sat in the Albany County jail awaiting trial on an unrelated charge, defendants ordered him brought to the Albany County Courthouse. When plaintiff arrived he was met by Bertrand Gould, his public defender. Attorney Gould explained to plaintiff that defendants wanted to speak to him about an ongoing robbery investigation. Plaintiff was then brought into a conference room where several detectives were waiting. At that point, Attorney Gould announced that "due to a conflict of interest" he would not remain in the room for the interrogation.

Beginning around 9:00 a.m., Detectives Wilcox and Matos interrogated Dukes about the robbery of Mitchell's apartment. Although they did not read him his Miranda rights, they asked plaintiff to initial a form stating they had in fact done so. By 12:30 p.m., defendants convinced plaintiff to acknowledge his involvement in the October robbery and persuaded him to sign a statement Detective Matos had prepared to that effect.

Dukes alleges Detective Matos had secretly added language to this written statement which falsely indicated plaintiff also had knowledge of Mitchell's murder in February. According to plaintiff, the detectives' questioning that morning did not touch on the subject of the murder at all and therefore plaintiff failed to notice defendants had included information about this second crime before he signed the statement.

After taking a break for lunch, Detectives Wilcox and Matos resumed the interrogation, again asking Dukes to initial a form acknowledging his Miranda rights even though they never actually read them to him. The detectives then began to question plaintiff about Mitchell's murder. Plaintiff repeatedly denied having any involvement in the murder, at one point breaking down in tears.

Nevertheless, Detective Wilcox began to feed Dukes a false narrative in which plaintiff had gone to Mitchell's apartment with Jones and Lyons, two of the other robbers, and that Jones had shot Mitchell. Detective Wilcox demanded that plaintiff adopt this story, and threatened plaintiff with the death penalty if he refused. Eventually, plaintiff relented and signed a statement, again prepared by Detective Matos, which recounted the story Detective Wilcox had pushed onto plaintiff. Attorney Gould returned to the room and terminated the interview. Plaintiff was arrested.

After obtaining Dukes' coerced confession, defendants were faced with a problem: plaintiff's story was inconsistent with the prior coerced statement from Parsons, which claimed Abdul-Hameed (not Jones or Lyons) had been with plaintiff at Mitchell's apartment the night of the murder. Defendants resolved this inconsistency by obtaining a second false corroborating statement from Parsons.

But defendants weren't done yet. They proceeded to build the murder case against Dukes by eliciting false confessions from Jones and Lyons using the same aggressive interrogation tactics employed against plaintiff. First, Detectives McKenna and Ryan traveled to Brooklyn, where Jones had been arrested during a traffic stop, and coerced him into signing a statement falsely admitting his involvement in Mitchell's murder. In addition, these detectives coerced Jones's girlfriend into signing a statement falsely claiming Jones had confessed directly to her. Second, Detectives Matos and Sbuttoni traveled to Georgia where they induced Lyons, one of the other robbers, to make yet another false statement implicating plaintiff and Jones.

On November 6, 1998, Dukes faced trial in Albany County Court on the robbery and murder charges.[4]  No forensic evidence tied plaintiff to the February murder, and when Parsons was called to testify he recanted his false statement implicating plaintiff.  Instead, the prosecution relied on Detectives Wilcox and Matos, both of whom testified falsely about the circumstances of plaintiff's interrogation and the validity of his confession.

The jury relied on this evidence to convict Dukes of the February murder as well as the October burglary and robbery of Mitchell's home.  Plaintiff was sentenced to 25 years to life for the murder, and to 12.5 to 25 years for the robbery.  Plaintiff took a direct appeal, and later sought habeas relief, but various courts rejected his claims.

On September 3, 2014, 17 years after Dukes' original arrest, police in Ohio arrested Conrad, the man initially identified as a suspect in Mitchell's murder, for the stabbing death of his girlfriend.  During an interrogation by the Cuyahoga County police, Conrad confessed to Mitchell's murder, accurately stating numerous details, including the distinctive position in which Mitchell's body had fallen as well as the relatively unique caliber of bullet used.

Upon learning of Conrad's confession, Dukes sought relief from Supreme Court, Albany County, which granted vacatur of both of plaintiff's convictions.  Although the County Court dismissed the murder charge outright, it did not dismiss the charges arising from the October robbery of Mitchell's apartment.  Plaintiff pleaded guilty to robbery in the first degree in satisfaction of this remaining charge, received a sentence of 7 to 14 years (since he had

---

[4]  Dukes sought to suppress his confession and other inculpatory statements on the basis that he had been questioned outside the presence of counsel.  After hearing false testimony from Detectives Matos and Wilcox, the County Court found plaintiff's confession admissible.  Notably, the issue of coercion was never directly addressed by the County Court.

already served 18 years on the murder and robbery convictions), and was released.  This action followed.

## III.  LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required."  Id.  "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims."  Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor."  Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) (Baxter, M.J.).  In making this determination, a court generally confines itself to the "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken."  Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Concord Assocs., L.P. v. Entm't Props. Tr., 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

IV.  **DISCUSSION**

Dukes asserts § 1983 claims for malicious prosecution, denial of his fair trial rights, and violation of his right against self-incrimination against the individual defendants (First, Second, and Third Causes of Action), § 1983 municipal liability and common law negligence claims against the City premised on its alleged failure to properly train its detectives (Fourth and Sixth Causes of Action), and a common law claim for malicious prosecution against all defendants (Fifth Cause of Action).  Defendants offer three reasons why plaintiff's claims must be dismissed.

A.  **Collateral Estoppel**

First, defendants contend Dukes cannot re-litigate whether his confession was coerced because this issue was raised and rejected at his criminal trial and in his post-conviction proceedings.  Plaintiff responds that neither his now-vacated murder conviction nor any of the state or federal post-conviction decisions reviewing its validity have any preclusive effect in this case.

Under New York law,[5] collateral estoppel applies only if:  "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."  Conason v. Megan Holding, LLC, 25 N.Y.3d 1, 17 (N.Y. 2015).

Defendants maintain that the voluntariness of Dukes' confession was already litigated and decided on several occasions:  at his suppression hearing, at trial, on appeal to the

---

[5]  "[F]ederal court[s] must . . . apply the collateral estoppel rules of the state which rendered the judgment."  Owens v. Treder, 873 F.2d 604, 607 (2d Cir. 1989).

Appellate Division, and finally in a habeas petition in federal court.  Although they concede plaintiff's murder conviction has since been vacated, defendants point out that it was vacated based on new evidence of another man's guilt rather than a specific finding that plaintiff's confession was involuntary.  According to defendants, the decisions of the state appellate court and the federal habeas court affirming the admission of plaintiff's confession remain valid and bar re-litigation of the coercion issue.

Working from the assumption that estoppel bars litigation in this case over the propriety of the confession, defendants go on to make arguments about why each of Dukes' claims for relief must fail.  First, defendants argue plaintiff's malicious prosecution claim must be dismissed because his adjudged-voluntary confession gave officers probable cause to charge him with murder.  Second, defendants contend this conclusion also forecloses his coercion and denial of fair trial rights claims because they are premised on an allegedly invalid confession.

Third, defendants argue Dukes' Monell claim must be dismissed because he is estopped from demonstrating either an individual constitutional violation (for instance, a coerced confession) which might have been caused by an underlying policy or practice attributable to the City.  Fourth, defendants contend plaintiff's negligence claim must be dismissed because plaintiff cannot use evidence that officers coerced his confession to demonstrate the City's negligence.

Dukes responds that the vacatur of his murder conviction prevents that criminal judgment, as well as any of the post-conviction decisions reviewing it, from having any preclusive effect in this case.  Plaintiff further argues the issue of coercion was never actually litigated in any of those prior proceedings.  According to plaintiff, the suppression hearing

and post-conviction challenges were limited to the issue of whether plaintiff knowingly waived his right to counsel before the interrogation, not the voluntariness of the uncounseled confession itself.  Finally, plaintiff invokes equitable principles to contend it would be unjust to preclude him from seeking recourse here.

Defendants' interpretation of collateral estoppel seems plainly wrong—a vacated criminal conviction cannot have preclusive effect.  See, e.g., Church v. N.Y. State Thruway Auth., 791 N.Y.S.2d 676 (N.Y. App. Div. 3d Dept. 2005) ("[W]hen no order or final judgment has been entered on a verdict or decision, or when the judgment is subsequently vacated, collateral estoppel is inapplicable."); Ruben v. Am. & Foreign Ins. Co., 592 N.Y.S.2d 167 (N.Y. App. Div. 4th Dept. 1992) ("Because the judgment was vacated, the jury verdict lacks finality and cannot be given collateral estoppel effect.").  Furthermore, the judgment of any court tasked with a review of that now-vacated criminal conviction likewise has no preclusive effect.  See Kogut v. Cty. of Nassau, 2009 WL 5033937 at *9-*10 (E.D.N.Y. Dec. 11, 2009) (holding appellate judgment had no preclusive effect where underlying trial court judgment had been vacated and plaintiff was acquitted on retrial).

Applying that principle in this case, Dukes' murder conviction was vacated and therefore it has no preclusive effect on the voluntariness of his confession or on any other issue.  In reply, defendants appear to concede that the law of collateral estoppel is not on their side yet insist that courts do not apply the doctrine "in a black and white manner."  Defs.' Reply Mem. at 10.[6]  They proceed to argue that equitable "[i]nterests of fairness and judicial economy" should nevertheless bar re-litigation of the coercion issue.  Id. at 11.

---

[6]  Pagination corresponds to CM/ECF.

But equitable factors also weigh heavily in favor of allowing Dukes to re-litigate this issue. Plaintiff's murder confession, obtained outside the presence of counsel, was put in serious doubt after another man credibly confessed to the crime. Indeed, it is on this basis that the County Court tossed out plaintiff's conflicting murder conviction. At this point, it would be inequitable to deny plaintiff the opportunity to demonstrate his rights were violated.

In light of the relaxed standard applicable at the motion-to-dismiss stage, Dukes has pleaded sufficient facts to support his claims of individual constitutional violations as well as the existence of a policy or practice attributable to the City. Accordingly, defendants' estoppel arguments as to each of plaintiff's claims will be rejected.

## B. Claim Accrual

Defendants next argue that Dukes' § 1983 and negligence claims are time-barred because the applicable limitations period began to run either at the time of his confession, arrest, indictment, or conviction, the latest of which occurred at least 16 years before he filed this civil action.

The statute of limitations for § 1983 actions is the same as that for personal injury actions in the state in which the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387 (2007). In New York, the statute of limitations for personal injury actions (and thus for § 1983 claims) and negligence claims is three years. Bailey v. City of N.Y., 79 F. Supp. 3d 424, 440 (E.D.N.Y. 2015); Annunziata v Quest Diagnostics Inc., 127 A.D.3d 630, 630 (N.Y. App. Div. 1st Dep't 2015). Generally speaking, this three-year statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of [the] action." Bailey, 79 F. Supp. 3d at 440.

Defendants argue Dukes' § 1983 and negligence claims accrued at the time of his confession and arrest (September 8, 1997), or, alternatively, upon his indictment (October 28, 1997) or conviction (November 1998), meaning that the three-year limitations period had long since run by the time he filed this action on August 7, 2017.

Dukes responds that his § 1983 claims did not accrue until the Albany County Supreme Court vacated his murder conviction because the rule announced in Heck v. Humphrey, 512 U.S. 477 (1994), barred him from filing them until that time.  As for his negligence claim against the City, plaintiff argues the statute of limitations should be equitably tolled because defendants actively concealed their misconduct, preventing him from pursuing relief.

Broadly stated, Heck precludes a prisoner from using § 1983 as a vehicle to obtain damages where success on the particular constitutional claims alleged would necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.  Poventud v. City of N.Y., 750 F.3d 121, 130 (2d Cir. 2014) (en banc).  In other words, "[a]ny claim stemming from the suppression of evidence favorable to a criminal defendant, the existence of conspiracy between prosecution and law enforcement, or the denial of the right to a fair trial - such as through the fabrication of evidence - necessarily implies the invalidity of the underlying criminal conviction, and thus is categorically precluded by Heck."  Robertson v. City of N.Y., 1:15-CV-8716-CM, ECF No. 24 at 6 (S.D.N.Y. Apr. 5, 2017); see also Bowers v. Kelly, 2015 WL 2061582 at *4 (S.D.N.Y. May 4, 2015).

As a result of Heck, these kinds of claims do not accrue unless and until the criminal conviction or sentence being challenged has been somehow invalidated.  See Heck, 512 U.S. at 489-90; see also Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) ("[W]here the

viability of the plaintiff's claim depends on his conviction being invalidated, the statute of limitations begins to run upon the invalidation, not the time of the alleged government misconduct.").

Because Dukes challenges the fairness of his murder trial, his § 1983 claims necessarily depend on his murder conviction being invalidated and therefore did not accrue until July 7, 2016, the date on which the County Court vacated his conviction. Accordingly, plaintiff's § 1983 claims are timely.

As for Dukes' negligence claim, it is not time-barred either. Plaintiff is claiming damages based on his wrongful conviction and confinement and therefore his negligence claim may well have been barred by Heck until the vacatur of his convictions. See Bailey, 79 F. Supp. 3d at 451 ("New York state courts adhere to the dictates of Heck."). Indeed, courts elsewhere have observed that Heck operates to bar related negligence claims that challenge the validity of an existing conviction. See, e.g., Dominguez v. Shaw, 2011 WL 6297971 at *13-14 (D. Ariz. Dec. 15, 2011) (applying Heck's reasoning to state law claims because it "will similarly promote finality and respect" for the prior criminal proceeding). Plaintiff could not have successfully pursued his negligence claim while his conviction stood because it is premised on, and related to, conduct that resulted in his wrongful conviction.

In any event, the doctrine of equitable tolling would apply to rescue Dukes' negligence claim. Equitable tolling of the statute of limitations is applied only in "rare and exceptional" circumstances. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). The party "seeking equitable tolling must show both that he diligently pursued his rights and that some extraordinary circumstance . . . prevented timely filing." Jenkins v. Greene, 630 F.3d 298 (2d Cir. 2010) (internal quotation marks omitted).

In this case, Dukes diligently pursued his rights by filing a direct appeal, pursuing that appeal to its conclusion, and later filing a federal habeas petition challenging his murder conviction.  He was essentially barred from filing his negligence claim until new evidence finally invalidated his murder conviction and exposed the egregious nature of law enforcement's misconduct.  It is sufficient for now to conclude that plaintiff's negligence claim is timely, either because it was Heck-barred until the vacatur of his conviction or because equitable tolling applies.

### C. Heck's Bar

Apparently seizing on Dukes' citation to Heck v. Humphrey, defendants raised for the first time in their reply brief the argument that plaintiff's current robbery conviction (based on his plea of guilty in 2016) gives rise to a Heck-based bar of all of his claims because his claims all bear a relationship to his robbery conviction.  As discussed above, Heck bars any claim that, if successful, "would necessarily imply the invalidity of [a valid] conviction or sentence."  512 U.S. at 487.

As an initial matter, this argument is procedurally improper because defendants first raised it in their reply briefing.  Even if it were properly raised, however, the argument fails on the merits.

### 1. Malicious Prosecution

Defendants contend Dukes' still-extant robbery conviction operates to bar his malicious prosecution claims because it prevents him from satisfying the "favorable termination" element of a malicious prosecution claim.

Under New York law, "[t]he elements of the tort of malicious prosecution are:  (1) the commencement or continuation of a criminal proceeding by the defendant against the

plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." De Lourdes Torres v. Jones, 26 N.Y.3d 742, 760 (2016).  To satisfy the "favorable termination" element, a plaintiff need not prove actual innocence, but rather must "demonstrate a final termination that is not inconsistent with innocence."  Rothstein v. Carriere, 373 F.3d 275, 286 (2d Cir. 2004).

Defendants rely in large part on DiBlasio v. City of N.Y., 102 F.3d 654 (2d Cir. 1996), a case which held that an acquittal is not a "favorable termination" when the prosecution also results in a conviction of a lesser included offense.  102 F.3d at 657-59 (holding plaintiff had not shown favorable termination where he was acquitted of drug sale charge but convicted of drug possession arising out of same events).

However, defendants' argument elides the difference between a conviction for a "lesser included offense" (e.g. varying degrees of robbery) and conviction for a lesser, unrelated offense (e.g. robbery versus murder)—a distinction squarely presented in this case.

Where, as here, there is essentially a mixed verdict in a plaintiff's underlying criminal proceedings, the court "considers whether the acquittal charge and the conviction charge are sufficiently distinct" to constitute a favorable termination.  Bailey, 79 F. Supp. 3d at 448.  Several factors are considered:  "(1) disparity in sentencing ranges; (2) the elements of each crime; and (3) whether the crimes were related or separate acts."  Id.

Janetka v. Dabe, 892 F.2d 187 (2d Cir. 1989), provides a pertinent example of a favorable termination involving a mixed verdict.  In Janetka, the defendant was arrested for disorderly conduct after an altercation in a convenience store and charged with resisting arrest after allegedly struggling with the arresting officer.  Id. at 188.  Thereafter, a jury

convicted the defendant of disorderly conduct but acquitted him of resisting arrest.  Id. at 189.

The trial court dismissed the defendant's later § 1983 action for malicious prosecution based on the resisting arrest charge because it concluded his acquittal was insufficient to constitute a "favorable termination" in light of his disorderly conduct conviction.  Janetka, 892 F.2d at 188.  But the Second Circuit reversed, finding the two offenses arose out of distinct allegations, had different elements, and were thus distinct offenses.  Id. at 190.  In so doing, the appeals court observed that to hold otherwise "would be particularly inappropriate in this case, where the charge for which [the defendant] was acquitted was more serious than the one for which he was convicted."  Id.

Dukes faced charges of murder and robbery, two offenses with different elements, different sentencing ranges and which, most importantly, were based on entirely different events—the crimes involved separate acts committed four months apart.  The two offenses are therefore much more distinct than those in Janetka, where the charges arose from events occurring within a few minutes of each other.  In sum, the two charges are clearly different and the unfavorable termination of the robbery charge against plaintiff is not inconsistent with plaintiff's innocence of the murder charge, which was dismissed by the County Court.  Accordingly, plaintiff has sufficiently pleaded the favorable termination element.

### 2. Section 1983 and Negligence Claims

Defendants next argue that Dukes' § 1983 and negligence claims are also Heck-barred because any challenge to the fairness of his murder trial would implicate the validity of the robbery conviction as well.

According to defendants, a challenge to the interrogation that resulted in Dukes' murder confession "would necessarily cast doubt on the validity of the robbery confession," since officers elicited both confessions during the same day-long interrogation.  Defs.' Reply Mem. at 6.

Likewise, defendants contend any challenge to the fairness of Dukes' original trial "would question the validity of his conviction and subsequent guilty plea to the robbery charge," since the original jury trial resulted in convictions for both the robbery and the murder.  Defs.' Reply Mem. at 6.

This argument erroneously treats Dukes' original (and now vacated) robbery conviction and his still-valid 2016 conviction as though they have the same effect on the instant litigation.  Plaintiff's current robbery conviction arose not out of his original trial, but rather from his 2016 guilty plea.

Even if plaintiff were challenging his confession to the robbery (which he is not), such a challenge would only impugn the validity of the first judgment, which has already been vacated.  See Poventud, 750 F.3d at 136-38 (holding § 1983 challenge to fairness of original trial was not Heck-barred where original judgment had been vacated and plaintiff had pleaded to lesser charge).  Likewise, plaintiff's challenges to the fairness of his original trial only put in doubt his original convictions, not his later guilty plea.

Furthermore, as noted above the murder and robbery charges Dukes faced are so distinct that are effectively two separate prosecutions.  Given that the Heck bar is in many ways analogous to the favorable termination element of malicious prosecution, the question of whether a mixed verdict gives rise to a Heck-based bar may be analyzed in the same way the favorable termination element is analyzed.  See Heck, 512 U.S. at 484-85, 489-90.

Again, the charges of conviction should be compared to the acquitted (or dismissed) charges to determine whether they are sufficiently distinct.  As detailed above, the murder and robbery charges were based on two distinct events that occurred four months apart.  The two offenses have distinct elements and potential sentences.  Both trial convictions were vacated.  The murder conviction was dismissed.  Consequently, plaintiff may challenge the fairness of the murder investigation and trial in 1997–1998 regardless of his 2016 plea of guilty to the robbery charge.

## V.  **CONCLUSION**

Defendants' collateral estoppel and issue preclusion arguments fail.  Dukes must have an opportunity to pursue the merits of his claims in discovery.

Therefore, it is

ORDERED that

Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: February 6, 2018
       Utica, New York.