UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARL DUKES,

        Plaintiff,

    -v-                                      1:17-CV-865

CITY OF ALBANY, PHILLIPPA
P. GARLAND–WILCOX, as
Administrator of the Estate of
Kenneth Wilcox, ANTHONY
RYAN, MICHAEL SBUTTONI,
PETER MCKENNA, KEVIN
BREEN, and RONALD MATOS,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LAVELL JONES,

        Plaintiff,

    -v-                                      1:18-CV-81

THE CITY OF ALBANY,
RONALD MATOS, P.J.
MCKENNA, ANTHONY RYAN,
MICHAEL SBUTTONI, PHILLIPPA
P. GARLAND–WILCOX,
Administrator of the estate of
Kenneth P. Wilcox, and KEVIN
BREEN,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| APPEARANCES: | OF COUNSEL: |
| KELNER & KELNER<br>Attorneys for Plaintiff Carl Dukes<br>140 Broadway, 37th Floor<br>New York, NY 10005 | JOSHUA D. KELNER, ESQ. |
| GLENN A. GARBER, P.C.<br>Attorneys for Plaintiff Lavell Jones<br>233 Broadway, Suite 2370<br>New York, NY 10279 | GLENN ANDREW GARBER, ESQ. |
| RICKNER PLLC<br>Attorneys for Plaintiff Lavell Jones<br>233 Broadway, Suite 2220<br>New York, NY 10279 | ROBERT RICKNER, ESQ. |
| THE REHFUSS LAW FIRM, P.C.<br>Attorneys for Defendants<br>40 British American Boulevard<br>Latham, NY 12110 | ABIGAIL W. REHFUSS, ESQ.<br>STEPHEN J. REHFUSS, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiffs Carl Dukes ("Dukes") and Lavell Jones ("Jones") spent nearly two decades unjustly imprisoned after being wrongfully convicted of the 1996 murder of Erik Mitchell. They were exonerated in 2016 after another man, Jeffrey Conrad, confessed. Upon their release from custody, Dukes and Jones (collectively "plaintiffs") filed these civil actions under 42 U.S.C. § 1983 and related state law against defendants City of Albany and the six police detectives who allegedly fabricated the evidence used against them at the murder

trial: Kenneth Wilcox[1], Anthony Ryan, Michael Sbuttoni, Peter McKenna, Kevin Breen, and Ronald Matos. Plaintiffs also filed suit in the New York Court of Claims pursuant to Court of Claims Act § 8–b, which provides a state law cause of action for the unjustly convicted and imprisoned to seek compensation directly from the State of New York.

After Jones's federal case was transferred in from the Eastern District of New York and Dukes's federal claims survived a pre-answer motion to dismiss, *Dukes v. City of Albany*, 289 F. Supp. 3d 387 (N.D.N.Y. 2018), the two § 1983 actions were deemed related and then consolidated for the limited purpose of pre-trial discovery. *See* Text Minute Entry for 3/5/18; *see also* Dkt. No. 28.[2] The presiding magistrate judge set July 31, 2018 as the deadline for amendments to pleadings, Dkt. No 26, and directed the parties to complete discovery by November 11, 2019, Dkt. No. 43.

On March 26, 2020, defendants wrote to the magistrate judge seeking leave to amend the answers in these § 1983 actions to assert a new affirmative defense based on the theory that recovery by either plaintiff in the New York Court of Claims should operate as a setoff to any damages award. Dkt. 45. Although they conceded that the deadline to amend the pleadings had long since passed, defendants insisted that amendment should nevertheless be permitted because, in their telling, they had just found out about the pending New York Court of Claims actions. *Id.*

Plaintiffs opposed amendment. Dkt. No. 46. According to them, defendants had known about the Court of Claims cases "since early in the discovery process" and that, in

---

[1] The complaints name Phillippa P. Garland–Wilcox, administrator of Kenneth Wilcox's estate.

[2] Docket citations are to the 17-CV-865 action unless otherwise noted, but parallel filings have been made in both cases.

fact, defendants' counsel had *participated* in the depositions of both plaintiffs at which Assistant Attorney General Anthony Rotondi ("AAG Rotondi"), the State's representative in the Court of Claims cases, had also taken part.  *Id*.  In the alternative, plaintiffs argued the proposed amendment would be futile, since the Second Circuit had already held in *Restivo v. Hessemann*, 846 F.3d 547, 581-82 (2d Cir. 2017), that recovery on a § 8–b action in the New York Court of Claims cannot form the basis for a setoff of money damages awarded in a § 1983 action in federal court.  *Id*.

In reply, defendants doubled down on their assertion that they had been totally unaware that the New York Court of Claims actions had actually been filed.  Dkt. No. 47.  According to defendants' counsel, he believed that AAG Rotondi's presence at plaintiffs' depositions was merely part of the State's "pre-action disclosure," and that in any event defendants "had never been provided with a copy of the filings in the action against the State of New York."  *Id*.  As to plaintiffs' assertion that binding Second Circuit precedent rendered their proposed amendment an exercise in futility, defendants argued that *Restivo* stood only for the proposition "that in most cases, the municipality is not entitled to an offset in the event of a SETTLEMENT with the state."  *Id*. (emphasis in original).

On April 8, 2020, the magistrate judge held a telephone conference to address the parties' dispute over the amended answers.  After hearing argument, the magistrate judge directed defendants to submit their proposed pleading and gave plaintiffs two weeks to respond with an opposition brief.  During the conference, defendants also sought to stay the § 1983 cases until the New York Court of Claims cases could be settled or, if necessary, tried to judgment.

On July 20, 2020, the magistrate judge denied defendants' request for a stay of these

proceedings but granted their motion to amend the answers to add the new affirmative defense based on a setoff of damages for any recovery in the New York Court of Claims. Dkt. Nos. 48-50. Although the magistrate judge agreed that the motions to amend were untimely, he found that there was some understandable confusion about precisely *when* the Court of Claims actions had been filed, since both were initially dismissed before being reinstated on appeal. Dkt. No. 50; *see also Jones v. State of N.Y.*, 90 N.Y.S.3d 644 (N.Y. App. Div. 3d Dep't 2018); *Dukes v. State of N.Y.*, 88 N.Y.S.3d 914 (N.Y. App. Div. 3d Dep't 2018) (memorandum). Accordingly, the magistrate judge found that "good cause" existed to excuse the untimeliness of defendants' request. Dkt. No. 50.

The magistrate judge further concluded that permitting the late amendments would not prejudice plaintiffs, since the issue "presents a purely legal question about the possible effect a state court judgment might have on Plaintiffs' ability to recover in the event of a favorable verdict in federal court." Dkt. No. 50. And "without expressing a view on the merits" of the parties' arguments about the Second Circuit's holding in *Restivo*, the magistrate judge found that defendants' "proposed amendment is not clearly futile" because it is consistent with the general policy disfavoring double recovery. *Id*. Thereafter, defendants filed amended answers in both § 1983 actions that included a thirty-second affirmative defense:

> That there is an action pending the Court of Claims against the State of New York under Court of Claims Act 8–b which, in the event of a settlement, judgment or verdict, would act as an offset or bar to any claim alleged against the answering defendants, see Restivo v. Hessemann, 846 F.3d 547 (2d Cir. 2017).

Dkt. No. 51.

On August 3, 2020, plaintiffs appealed from the magistrate judge's July 20 Order permitting the amendments and moved in the alternative to strike defendants' new affirmative

defense under Rule 12(f) of the Federal Rules of Civil Procedure. Dkt. No. 52. The motions have been fully briefed in both cases and will be decided on the basis of the submissions without oral argument.

## II. LEGAL STANDARD

A magistrate judge's order granting a party leave to amend a pleading is a non-dispositive order entitled to deference. *Utica Mut. Ins. Co. v. Century Indem. Co.*, 2015 WL 3429116, at *2 (N.D.N.Y. May 11, 2015) (explaining intra-circuit uncertainty regarding appropriate standard of review). "Under the clearly erroneous standard of review of Rule 72(a), the magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id*. "Meanwhile, an order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id*. Importantly, however, "a magistrate judge's decision is contrary to law only where it runs counter to controlling authority." *Id*. In other words, a magistrate judge's order "simply cannot be contrary to law when the law itself is unsettled." *Id*.

## III. DISCUSSION

Plaintiffs contend that the July 20 Order should be vacated and defendants' motions to amend should be denied because they were untimely, will unnecessarily delay both § 1983 actions, and are futile under governing Second Circuit precedent. Pls.' Mem., Dkt. No. 52-1 at 9-15.[3] In opposition, defendants assert that they took prompt action to amend their

---

[3] Pagination corresponds to CM/ECF.

answers in these § 1983 cases as soon as they learned about the pending New York Court of Claims actions. Defs.' Mem., Dkt. No. 55 at 6-11. As to futility, defendants argue that the Second Circuit's holding in *Restivo* is distinguishable because it involved a settlement with the State of New York, not a judgment after trial. *Id*. at 11-14.

Plaintiffs reply that, even taken at face value, defendants' explanation means that they "still knew that plaintiffs had a Court of Claims case pending early in 2019 and did nothing whatsoever to determine whether it was related to this one – not even simply picking up a telephone to ask one of the other attorneys." Pls.' Reply, Dkt. No. 56 at 4. Plaintiffs assert that defendants' unjustified delay has derailed settlement discussions and will delay any trial in these § 1983 actions. *Id*. According to plaintiffs, defendants' new affirmative defense is "legally groundless, and should be put to rest now." *Id*.

The parties' dispute boils down to a disagreement over how to read *Restivo*, a case in which the Second Circuit affirmed a trial court's refusal to offset § 1983 damages awarded to two exonerees by the amount they had received in § 8–b settlements in the Court of Claims with the State of New York. The facts and claims of *Restivo* are actually fairly similar to the ones presented by plaintiffs in these § 1983 cases, but the procedural history and holdings are more convoluted. So *Restivo* is worth discussing in some depth.

The facts are as follows. Dennis Halstead and John Restivo were convicted of the 1984 rape and murder of a teenage girl and sentenced to decades in prison. *Restivo*, 846 F.3d at 552. The State's prosecution hinged largely on a written confession that detectives had browbeaten out of a third man named John Kogut. *Id*. at 552, 554. Kogut's coerced confession claimed that he, Restivo, and Halstead had acted together in the rape and murder. *Id*. Halstead and Restivo were tried jointly and convicted of rape and second

degree murder; Kogut was tried separately but convicted just the same. *Id*. at 552. The three were sentenced to indeterminate terms of thirty–plus years to life in prison. *Id*.

After DNA testing exonerated all three men in 2003, the trio filed suit in the New York Court of Claims pursuant to New York Court of Claims Act § 8–b. *Restivo*, 846 F.3d at 568. Section 8–b, also known as the Unjust Conviction and Imprisonment Act, provides that "individuals who can demonstrate that they were wrongly convicted of state crimes are entitled to compensation, regardless of whether there was any wrongdoing by a government official." *Id*. Plaintiffs sought compensation for the sixteen years they each spent wrongfully imprisoned and eventually settled their § 8–b claims with the State for $2.2 million each. *Id*.

Thereafter, the three men filed § 1983 actions alleging that, *inter alia*, the six police detectives working the investigation that led to their convictions had deprived them of their constitutional rights to a fair trial by concealing exculpatory evidence and/or planting physical evidence. 846 F.3d at 557. Although it took two federal jury trials and the dismissal of Kogut's claims, Restivo and Halstead eventually won damages of $18 million each against Joseph Volpe, one of the detectives.[4] *Id*. at 558, 567-68.

Volpe moved after trial to reduce the jury's damages awards by $2.2 million; *i.e.*, the amount that Restivo and Halstead received from the State of New York when they settled their § 8–b actions in the Court of Claims. *Restivo*, 846 F.3d at 568. In Volpe's view, permitting the two plaintiffs to keep their full § 1983 award *and* their § 8–b settlement money violated the traditional rule against double recovery. *Id*. The trial court rejected that

---

[4] At the first trial, the jury came back with an across-the-board verdict in favor of the six detective–defendants. *Restivo*, 846 F.3d at 558. All three plaintiffs moved for a new trial, which the district court granted as to Restivo and Halstead but denied as to Kogut, the man who had confessed during the underlying criminal matter. *Id*. At the second trial, the remaining plaintiffs narrowed their claims to focus on the alleged misconduct of Joseph Volpe and Charles Fraas, just two of the six detective–defendants. *Id*.

argument, concluding that a setoff of damages "would violate federal policies underlying Section 1983." *Id*.

A divided panel of the Second Circuit affirmed that conclusion. *Restivo*, 846 F.3d at 581-87. Writing for the majority, Judge Pooler found that the trial court had correctly applied a policy of proportional reduction, under which "the jury is to decide the relative faults of the tortfeasors." *Id*. at 586. But because the State of New York had "never been found to have been at fault, as it was sued under and settled pursuant to a state law that provided for compensation without any showing of fault by the State," the majority held that the lower court had correctly refused to grant any proportionate reduction in the damages awards. *Id*.

Judge Livingston dissented from the majority's conclusion that a setoff for damages was inappropriate. *Restivo*, 846 F.3d at 593 (Livingston, J., concurring in part and dissenting in part). In her view, "it is widely accepted as a matter of federal law that a plaintiff may not recover twice on parallel state- and federal-law claims and hence that the plaintiff must generally set off any recovery he or she is awarded in prosecuting one claim by the amount attributable to the other." *Id*. at 594.

Judge Livingston acknowledged that the State of New York could not be sued for money damages in federal court under § 1983, but concluded that the rule against double recovery should apply anyway because the "same operative facts and harms" were at issue in both the § 1983 and the § 8–b proceedings. *Restivo*, 846 F.3d at 595. To that end, Judge Livingston found it telling that at the damages phase of trial, the plaintiffs' witnesses had offered "substantial testimony . . . describing the effect that nearly eighteen years' imprisonment had on them psychologically, emotionally, and socially." *Id*.

The dissent found it "nearly impossible to characterize the jury's verdict in this case as

*not* targeted at making Restivo and Halstead whole for their time in prison," something which in Judge Livingston's view was "just [the] sort of injury . . . for which New York's section 8–b action seeks to compensate." *Restivo*, 846 F.3d at 596 (emphasis in original). Thus, "[b]ecause the rule against double recovery is designed to afford a plaintiff a full, but only one, recovery for his compensable injury even where brought under distinct causes of action or in different forums, common law principles incorporated into federal law require[d] offsetting Restivo and Halstead's recovery" by the amount they had already received from settlements in the § 8–b action. *Id*.

Defendants take essentially the same view of *Restivo* as Judge Livingston did in her dissent. According to defendants, *Restivo*'s logic is inapplicable where, as here, the § 8–b claims did not result in settlements in the Court of Claims but are instead likely to proceed to trial against the State of New York.[5] Defs.' Mem. at 12-14. Defendants argue that trial in the New York Court of Claims and in the § 1983 actions will both require plaintiffs to prove "their confessions were involuntary and coerced by the City defendants." *Id*. at 13. Thus, as defendants understand it, plaintiffs "stand to recover a windfall of significant damages based on the exact same set of facts, circumstances and injuries." *Id*. at 12-13.

Plaintiffs argue that these distinctions are irrelevant. Pls.' Reply at 8, 13. As plaintiffs explain, the alleged wrongdoing by the Albany police detectives will be the subject of trial on the § 1983 claims. *See id*. at 8-9. Although that wrongdoing might *also* be a part of the story told at any trial on the § 8–b actions in the Court of Claims, damages recovered in those actions will be paid out by the State of New York, not by the individual defendants, and any

---

[5] According to plaintiffs' submission, the Court of Claims actions are scheduled for a joint trial set to begin on March 1, 2021. Pls.' Reply at 6 n.1.

recovery will be premised on a showing that plaintiffs did not commit the murder for which they were charged and convicted, not on a showing of wrongdoing by one or more of the Albany police detectives. *Id*.

Upon review, defendants' affirmative defense must be dismissed. As an initial matter, defendants' proffered excuses do not justify the excessive period of delay in seeking to amend the answers. Although a request to amend that runs afoul of the deadline in a Rule 16 scheduling order can be justified with a showing of "good cause," that inquiry "turns on the diligence of the moving party." *Blake Marine Grp., LLC v. Frenkel & Co.*, 425 F. Supp. 3d 330, 335 (S.D.N.Y. 2019).

The record reflects an absence of diligence. In a letter brief filed at the magistrate judge's direction on April 21, defendants conceded that they were "aware that an Amended Verified Claim Pursuant to Court of Claims Act 8–b had been filed with the State of New York." Dkt. No. 48. According to defendants, however, knowledge of the filing of the Verified Claim did not make them aware of an allegedly separate fact: "that a lawsuit had been filed." *Id*.

But as plaintiffs point out, those are the same thing—the filing of a Verified Claim with the State of New York is *how* a claimant initiates a lawsuit in the New York Court of Claims. *See* N.Y. CT. CL. ACT § 11(a). While it might be unfair to expect every practitioner to know the nuts and bolts of practice in the Court of Claims, the exercise of an exceedingly minimal amount of effort—such as a quick Google search or perhaps a short telephone call with opposing counsel to clarify what a "verified claim" might mean in this context—would have quickly disabused defendants' counsel of his allegedly mistaken notion.

Even if this initial confusion were justified, though, defendants' April 21 letter goes on

to acknowledge that AAG Rotondi was not only present for, but an active participant in, defendants' scheduled depositions of both plaintiffs. Dkt. No. 48. This arrangement materialized in early 2019, after Jones's counsel put defendants' attorneys in touch with the State attorney responsible for handling "the Court of Claims case." Dkt. No. 49. Notably, by the time these events occurred, both of plaintiffs' Court of Claims actions had been reinstated by the Appellate Division. *Jones*, 90 N.Y.S.3d 644; *Dukes*, 88 N.Y.S.3d 914.

In defendants' view, it was at this point still "quite reasonable to have believed that given the fact that both Mr. Jones and Mr. Dukes were incarcerated in a State owned/operated/run correctional facility for 19 years, that the claims arose out of their treatment or incidents which occurred during their incarceration." Dkt. No. 48. But resting on a mistaken assumption under these circumstances is not an acceptable substitute for the basic investigative effort that diligence demands. After all, any lingering confusion that defendants may have had over the nature (or status) of plaintiffs' pending claims against the State of New York could have been readily dispelled with a simple inquiry from counsel about the reason for AAG Rotondi's presence at either of the two depositions in which both attorneys took part.

To be sure, reasonable confusion followed by prompt, diligent remedial action will often justify or excuse out-of-time amendments. But at a certain point a parties' admitted knowledge of a constellation of peripheral facts gives rise to an obligation to investigate further rather than persist in some state of continued ignorance. Because defendants failed to exercise sufficient diligence on this issue, they have failed to show "good cause" and therefore the untimely nature of their request to amend cannot be excused. Accordingly, the July 20 Order will be vacated to the extent it permitted the amendment and the thirty-second

affirmative defense will be stricken from the amended answer.

The affirmative defense would also be dismissed for futility under the logic of *Restivo*. "Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted), *cert. denied*, 520 U.S. 1230 (1997); *see also Heck v. Humphrey*, 512 U.S. 477, 483 (1994) ("We have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability."); Michael Wells, *Constitutional Remedies, Section 1983 and the Common Law*, 68 MISS. L.J. 157 (1998) ("Constitutional tort law marries the substantive rights granted by the Constitution to the remedial mechanism of tort law.").

Although the precise state-of-mind requirement necessary to win relief varies depending on the type of substantive constitutional claim a plaintiff has alleged, *Brandon v. Kinter*, 938 F.3d 21, 38 (2d Cir. 2019), a successful § 1983 claim holds an individual personally responsible for the role his or her own acts or omissions played in violating someone's constitutional rights, *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (requiring a plaintiff to show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution"). That is why an award of § 1983 money damages against an individual defendant is executed against the official's personal assets. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).[6]

By contrast, New York Court of Claims Act § 8–b "was enacted to provide redress to innocent persons who prove by clear and convincing evidence that they were unjustly

---

[6] That is also why a municipality cannot be held liable under § 1983 merely because it happened to employ the tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Instead, "under § 1983[ ] local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).

convicted and imprisoned."  *Ivey v. State*, 80 N.Y.2d 474, 479 (N.Y. 1992).  Unlike § 1983, a Court of Claims § 8–b action does not require a claimant to prove any degree of fault against any individual defendant.  *Restivo*, 846 F.3d at 583 (noting absence of fault requirement in the statute).  Instead, a claimant's right to compensation turns on establishing an erroneous conviction, not an individual government official's misconduct.  *Ivey*, 80 N.Y.2d at 479 ("[T]he 'linchpin' of the statute is innocence.").  In fact, individual defendants cannot even be sued in the New York Court of Claims, which is why an award of compensation in a § 8–b action is paid directly by the State itself.  *See* N.Y. CT. CL. ACT §§ 8–b(2), 9(3-a).

In other words, these two actions compensate for different harms.  On the one hand, § 1983 was "designed to deter constitutional torts by making the tortfeasors liable in damages to their victims."  *Ciraolo v. City of N.Y.*, 216 F.3d 236, 243 (2d Cir. 2000) (Calabresi, J., concurring).  On the other, New York Court of Claims Act § 8–b "imposes liability on the State regardless of whether the State is liable in the sense of a 'traditional' torfeasor."  *Peacock v. City of Rochester*, 2016 WL 4150445, at *5 (W.D.N.Y. Aug. 5, 2016).

Equally as important, the State of New York is not a party to either of these § 1983 damages actions.  Nor could it ever be joined as one.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a "State" is not a "person" under § 1983).  Although Judge Livingston's dissent in *Restivo* dismissed this limitation on suit as "merely a function of the Eleventh Amendment," the majority recognized that it has important practical consequences that are relevant here:  it renders a jury in a § 1983 action unable to consider "what fault, if any, it might have attributed to the State."  *Restivo*, 846 F.3d at 583.

To be sure, *Restivo* muddied the waters a bit by opining in dicta that Volpe might have had a better argument in favor of a proportionate reduction in damages if he had (1) sought

to "introduce evidence tending to show that the State bore a share of the responsibility for plaintiffs' incarceration," (2) "request[ed] an instruction that the jury should determine the State's proportionate share of liability," or even (3) asked the Court to instruct the jury to "consider the effect of a prior settlement when determining damages."  846 F.3d 586.

But a trial court would have rejected those requests because there would be no basis on which to properly introduce evidence against the State of New York in the § 1983 actions, which seek to hold the individual Albany police detective defendants liable for their own misconduct in securing plaintiffs' wrongful convictions for murder.  *Restivo*, 846 F.3d at 586 ("The State has never been found to have been at fault, as it was sued under and settled pursuant to a state law that provided for compensation without any showing of fault by the State.").

Of course, *Restivo* dealt with a settlement in the Court of Claims.  But a straightforward application of its logic and reasoning would compel the same result in the event of a judgment after trial.  Even if the proof submitted on the § 8–b action in the Court of Claims involved some of the same or similar testimony, a recovery against the State of New York does not depend on a showing of any individual's fault but on either plaintiffs' ability to prove (1) he did not commit the murder; and (2) "he did not by his own conduct cause or bring about his conviction."  *See* N.Y. CT. CL. ACT § 8–b(5).

As in *Restivo*, no amount of a jury's damages award to either plaintiff in these § 1983 actions "could even theoretically [be] attributable to the State of New York, whether or not the State of New York had previously settled, because the State of New York is not a proper party under Section 1983."  846 F.3d at 583.  Thus, at the end of the day, it does not matter whether the New York Court of Claims actions are resolved by settlements (in which the

State would not be likely to admit fault) or at a trial (in which the plaintiffs would not need to prove fault to recover).  Accordingly, the thirty-second affirmative defense in the amended answer would also be dismissed as futile.

## IV.  **CONCLUSION**

The classic example of an appropriate setoff is when a plaintiff sues two joint tortfeasors, settles with one defendant, takes the other to trial, and receives from the jury a damages award for an injury or loss caused by both.  Because that kind of award represents the fact finder's determination of common damages for the single injury or loss, it makes sense to allow the nonsettling defendant to seek a reduction based on the settlement amount.  But the dispute here is about different damages for different harms caused by different defendants that would be paid by different sources.  Plaintiffs' § 1983 claims might eventually lead to compensation from the individual defendants upon a showing that those officials deprived them of their constitutional rights; plaintiffs' § 8–b claims might eventually lead to compensation from the State of New York upon a showing of innocence of the murder and blamelessness for the fact of conviction.

Therefore, it is

ORDERED that

1. Plaintiffs' motion to strike defendants' thirty-second affirmative defense is GRANTED;

2. The magistrate judge's order of July 20, 2020 is VACATED to the extent it permitted defendants to file an Amended Answer that included the thirty-second affirmative defense;

3. The thirty-second affirmative defense in the Amended Answer is STRICKEN;

4. The remaining allegations in the Amended Answer remain in effect;

5. A jury trial in plaintiff Carl Dukes's § 1983 action[7] will commence on December 1, 2020 in Utica, New York; and

6. A jury trial in plaintiff Lavell Jones's § 1983 action will commence on February 1, 2021 in Utica, New York.

IT IS SO ORDERED.

Dated: October 6, 2020
       Utica, New York.

_____
United States District Judge

---

[7] Although plaintiffs have represented that there is a joint trial in the New York Court of Claims set to begin on March 1, 2021, separate trial dates are being set in these § 1983 actions because the parties have not moved for a consolidated or joint trial.